# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### Civil Action No.

MICHELLE JORDAN,

        Plaintiff,

v.

CAROLINA ONCOLOGY SPECIALISTS,
P.A. and ONCOLOGY SPECIALISTS OF
CHARLOTTE, P.A.

        Defendants.

## COMPLAINT

### JURY TRIAL DEMANDED

Plaintiff Michelle Jordan ("Plaintiff") brings this action against the Defendants Carolina Oncology Specialists, P.A. ("Carolina Oncology") and Oncology Specialists of Charlotte, P.A. ("Oncology Specialists") (hereinafter collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e *et seq*. ("Title VII"); and wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, and alleges the following.

## PARTIES

1. Plaintiff is a resident of Waxhaw, North Carolina.

2. Defendant Carolina Oncology Specialists, P.A. is a professional corporation formed under the laws of North Carolina, registered to do business in North Carolina, with its principal place of business located at 225 18th Street SE, Hickory, North Carolina, 28602.

3. Defendant Oncology Specialists of Charlotte, P.A. is a professional corporation formed under the laws of North Carolina, registered to do business in North Carolina, with its

1

principal place of business located at 2711 Randolph Rd., Building 400, Charlotte, North Carolina, 28207.

4. Defendants employed Plaintiff during the events giving rise to this action.

5. At all relevant times, Defendants Carolina Oncology Specialists, P.A. and Oncology Specialists of Charlotte, P.A. operated as an integrated enterprise and joint employers with respect to Plaintiff's employment.

6. Defendants jointly controlled significant aspects of Plaintiff's employment. Plaintiff was hired by Nathan White, who served as CEO of Carolina Oncology Specialists, while Plaintiff worked as Executive Director of Oncology Specialists of Charlotte. Mr. White supervised Plaintiff, evaluated her performance, directed organizational changes affecting her position, and participated in the decision to terminate her employment.

7. Following the merger of Oncology Specialists of Charlotte and Carolina Oncology Specialists, Plaintiff's job duties, reporting structure, compensation, and continued employment were subject to the direction and control of both entities. Plaintiff received compensation through both entities, performed work benefiting both entities, and was supervised by leadership acting on behalf of both entities.

8. Defendants shared common ownership, management, and business purpose. The same group of owners and managers made or influenced employment decisions affecting Plaintiff while acting on behalf of Carolina Oncology Specialists, P.A. and Oncology Specialists of Charlotte, P.A.

9. Upon information and belief, Defendants benefited directly from Plaintiff's employment, shared control over the economic aspects of her job, and jointly participated in and/or ratified the conduct that led to her termination.

2

10. As a result, Carolina Oncology Specialists P.A. and Oncology Specialists of Charlotte, P.A. are properly considered Plaintiff's joint employers under Title VII and are jointly and severally liable for the unlawful discrimination and retaliation alleged in this Complaint.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under Title VII, because the claims arise under the laws of the United States.

12. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

13. This Court has personal jurisdiction over Defendants because Defendants conduct business in Charlotte, North Carolina, and Hickory, North Carolina, which are both located within this judicial district.

14. At all times relevant to this action, Plaintiff was an "employee" within the definition of Title VII, 42 U.S.C.§ 2000e *et seq*. (specifically, 42 U.S.C. § 2000e(f)), and therefore covered by the protections of Title VII.

15. At all relevant times herein, each Defendant was an "employer" within the definition of Title VII, 42 U.S.C.§2000e *et seq*. (specifically, 42 U.S.C. § 2000e(b)).

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendants conduct business in this district.

## ADMINISTRATIVE EXHAUSTION

17. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination on April 16, 2026 against Defendants with the United States

Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination, sexual harassment, and retaliation arising out of the conduct alleged herein.

18.     The EEOC issued a Notice of Right to Sue.  Plaintiff timely brings this action within ninety (90) days of her receipt thereof.

## GENERAL ALLEGATIONS

19.     Plaintiff is a female and is a member of a protected class.

20.     On or about May 14, 2024, Plaintiff was hired as Executive Director of Oncology Specialists of Charlotte and, following the merger of the practices, continued her employment under the Carolina Oncology Specialists organization while retaining responsibilities that benefited both entities.

21.     During Plaintiff's employment, she reported to Nathan White as her manager.

22.     On or about April 17, 2025, Defendants awarded Plaintiff a salary increase in recognition of her strong performance, which was documented in contemporaneous emails and reflected on her paystub.

23.     On or about June 26, 2025, Defendants awarded Plaintiff a second salary increase for her exemplary performance, again confirmed by email correspondence and payroll records.

24.     On or about October 20, 2025, at a OneLocal meeting where Stacy Alcuaz, the Vice President of Regional Operations for OneOncology, was present, Mr. White made a comment that "Michelle always looks great and dresses so nicely."

25.     On or about October 31, 2025, Mr. White sent an unsolicited picture to Plaintiff's personal cell phone via text message, without any prior request, or prompting from Plaintiff, or legitimate work-related context.

4

26. The photograph sent to Plaintiff was of Mr. White and was accompanied by no explanation or work-related purpose, causing Plaintiff to feel shocked, confused, and uncomfortable. Plaintiff retained a copy of the picture.

27. Despite this incident wherein Mr. White sent Plaintiff the photograph, Plaintiff continued to perform her job duties.

28. Over time, Mr. White made repeated and unwelcome comments about Plaintiff's appearance, including statements such as "not to be a creepy old man," "you look really nice," and similar remarks to that effect. She also received repeated unsolicited personal communication from Mr. White. These comments and communications were ongoing, personal in nature, and inappropriate in a professional setting.

29. Kaytlyn Stackhouse was a witness to one comment that Mr. White made, stating "the color and fit of that blazer look good on you. I can tell you have lost some weight."

30. On or about December 31, 2025, Plaintiff received a performance bonus communicated by email from providers and deposited into her bank account, further evidencing Defendants' satisfaction with her work and her status as a valued employee.

31. Prior to her termination, Plaintiff had never received any written discipline, performance improvement plan, final warning, suspension, or other indication that her employment was in jeopardy. Plaintiff was never informed that Defendants were dissatisfied with her performance and was never advised that termination was being considered.

32. On or about January 14, 2026, Mr. White commented on Plaintiff's suit saying it "fitted [her] frame really well."

33. On or about February 24, 2026, Plaintiff attended a dinner with her husband, John Jordan, and Mr. White. The dinner was arranged in advance and confirmed by an email

5

reservation.

34. Following the February 24, 2026 dinner, Plaintiff observed a noticeable change in Mr. White's treatment of her. After previously maintaining a collaborative working relationship with Plaintiff and encouraging her input, Mr. White became less receptive to Plaintiff's feedback and increasingly critical of her.

35. During this time, the professional and personal boundaries between Mr. White and Plaintiff remained a source of discomfort for Plaintiff, given Mr. White's prior unsolicited text message with the photograph, inappropriate comments, and negative treatment toward her.

36. In early 2026, during a Microsoft Teams meeting between Plaintiff and Mr. White and following a merger, Mr. White made a sexually suggestive comment directed at Plaintiff, stating words to the effect that "people will think you have naked pictures of me on your phone." This remark referenced Mr. White's prior sending of the unsolicited photograph to Plaintiff's phone, and it implied that Plaintiff maintained or possessed intimate images of him, thereby sexualizing their interactions and their communications. The statement suggested that Plaintiff's professional relationship with Mr. White and her advancement within the organization could be perceived as resulting from a personal or sexual relationship rather than her qualifications and performance.

37. Mr. White's comment was made in the course of a work meeting, was unrelated to any legitimate business purpose, and made Plaintiff feel embarrassed, objectified, and distressed.

38. Taken together, Mr. White's unsolicited transmission of a personal picture to Plaintiff's phone and his subsequent sexually charged remark about people thinking Plaintiff had "naked pictures" of him on her phone, created and contributed to a sexually harassing and offensive work environment that Plaintiff was forced to endure as a condition of her

6

employment.

39. Plaintiff did not encourage, welcome, or reciprocate Mr. White's comments, sexually suggestive remarks, personal communications, and other inappropriate conduct and instead attempted to maintain a professional working relationship.

40. On March 3, 2026, Plaintiff attempted to raise concerns regarding Mr. White's comments, sexually suggestive remarks, personal communications, and other inappropriate conduct with Dr. Justin Favaro.

41. On March 5, 2026, Plaintiff attempted to raise similar concerns regarding Mr. White's comments, sexually suggestive remarks, personal communications, and other inappropriate conduct with Dr. Nasfat Shehadeh.

42. Rather than listening to Plaintiff's concerns, conducting any inquiry, or taking any corrective action, Dr. Favaro and Dr. Shehadeh refused to discuss Plaintiff's concerns and directed Plaintiff back to Mr. White.

43. On March 18, 2026, within less than a month after Mr. White met Plaintiff's husband, Mr. Jordan, at the February 24, 2026 dinner, Plaintiff's employment was terminated.

44. At the time of her termination, Plaintiff reasonably believed that Defendants' stated concerns regarding her performance and conduct were false and inconsistent with the positive feedback, compensation increases, bonus compensation, and treatment she had received throughout her employment.

45. On March 18, 2026, Defendants presented Plaintiff with a Separation Agreement and Release of Claims stating that her employment was terminated effective March 18, 2026, and offering her a $30,333.33 gross separation payment in exchange for a broad release of claims. That agreement specifically recited that Plaintiff "agrees she has made no claims of

7

sexual harassment or abuse," and it sought a release of a wide range of employment-related claims, including claims under Title VII and other federal and state laws. The agreement further represented that Plaintiff had not filed any complaints or made Defendants aware of facts that could lead to claims, despite Plaintiff having previously raised concerns regarding Mr. White's comments and conduct.

46. Upon information and belief, Defendants' inclusion of language disclaiming sexual-harassment claims in the separation agreement supports an inference that Defendants were aware of potential sexual-harassment claims arising from Mr. White's conduct and sought to obtain a release of those claims.

47. Plaintiff therefore alleges that Defendants discriminated against her because of her sex and retaliated against her for opposing sex-based harassment.

48. Plaintiff further alleges that Defendants failed to protect her from that conduct and instead terminated her employment on March 18, 2026. Defendants' stated reasons for Plaintiff's termination were false and pretextual and were inconsistent with Plaintiff's recent raises, bonus compensation, lack of prior discipline, and otherwise strong performance record.

49. The timing of Plaintiff's termination, occurring shortly after Plaintiff raised concerns regarding Mr. White's conduct and within weeks of the deterioration of Plaintiff's relationship with Mr. White, supports an inference of discriminatory motive, retaliatory motive, and pretext.

50. Plaintiff further alleges that Defendants retaliated against her for opposing sex-based harassment by Mr. White by terminating her employment on March 18, 2026.

51. As a result of Defendants' conduct, Plaintiff has suffered lost wages, lost bonuses, lost equity compensation, loss of career advancement opportunities, reputational harm, and

8

emotional distress.

**COUNT I**

**Title VII - Sex Discrimination**

52. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

53. Plaintiff is female and a member of a protected class protected by Title VII.

54. At all relevant times, Defendants employed at least fifteen (15) employees.

55. Plaintiff was qualified for her position and performed her job satisfactorily.

56. Defendants subjected Plaintiff to adverse employment actions, including the termination of her employment.

57. Plaintiff's sex was a motivating factor in Defendants' decision to terminate her employment.

58. Defendants' stated reasons for terminating Plaintiff were false, pretextual, and not the true reasons for their actions.

59. Upon information and belief, Defendants treated Plaintiff less favorably than similarly situated male executives who engaged in comparable conduct.

60. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other damages.

61. Defendants acted intentionally and with reckless disregard for Plaintiff's federally protected rights.

**COUNT II**

**Title VII – Hostile Work Environment / Sexual Harassment**

62. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

9

63. Plaintiff was subjected to unwelcome conduct based on her sex.

64. Such conduct included repeated comments regarding Plaintiff's appearance, unsolicited personal communications, an unsolicited photograph sent to Plaintiff's personal phone, and sexually suggestive remarks by her supervisor, Nathan White.

65. The conduct was based upon Plaintiff's sex.

66. The conduct described above, including repeated comments regarding Plaintiff's appearance, unsolicited personal communications, an unsolicited photograph sent to her personal phone, and sexually suggestive remarks from her direct supervisor, was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, abusive, and offensive working environment.

67. Defendants knew or should have known of the harassment because it was committed by Plaintiff's supervisor and decisionmaker. Defendants, acting through their officers, directors, owners, managers, and Human Resources personnel, ratified or condoned the conduct described herein by failing to investigate Plaintiff's complaints and by terminating Plaintiff rather than addressing the complained-of conduct.

68. Defendants failed to take prompt and effective action reasonably calculated to stop the harassment and instead terminated Plaintiff's employment.

69. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including emotional distress, humiliation, embarrassment, mental anguish, lost wages, and other compensatory damages.

70. Defendants acted intentionally and with reckless disregard for Plaintiff's federally protected rights.

10

## COUNT III

### Title VII – Retaliation

71. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

72. Plaintiff engaged in protected activity when she reported concerns regarding Mr. White's comments, sexually suggestive remarks, personal communications, and other inappropriate conduct and opposed conduct that she reasonably believed constituted unlawful sex-based harassment.

73. Defendants were aware of Plaintiff's protected activity.

74. Following Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse employment actions, including termination of her employment.

75. A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions.

76. Defendants' stated reasons for terminating Plaintiff were false and pretextual.

77. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other damages.

78. Defendants acted intentionally and with reckless disregard for Plaintiff's federally protected rights.

## COUNT IV

### Wrongful Discharge in Violation of Public Policy

79. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

80. Defendants employed at least fifteen (15) employees at all relevant times.

11

81. Defendants violated the public policy of North Carolina, as reflected in N.C. Gen. Stat. § 143-422.1, by terminating Plaintiff because of her sex and because she opposed sex-based harassment in the workplace.

82. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

83. Defendants' actions were done maliciously, willfully, or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

84. Defendants' officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. An Order awarding Plaintiff damages for Defendants' violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendants' violation of Title VII of the Civil Rights Act of 1964;

2. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

3. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

4. An Order awarding Plaintiff the costs of this action;

12

5.      An Order awarding Plaintiff reasonable attorneys' fees;

6.      An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

7.      An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
GESSNERLAW, PLLC
6146 Rea Road Ste. B7, Box 77126
Charlotte, North Carolina 28277
Tel: (844) 437-7637; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff*
